MARYLAND COMMISSION ON HUMAN RELATIONS
ET AL. *v.* MASS TRANSIT ADMINISTRATION

[No. 126, September Term, 1981.]

*Decided September 2, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Risselle Rosenthal Fleisher, General Counsel,* with whom was *Philip L. Marcus* on the brief, for appellants — cross appellees.

*Joseph S. Kaufman,* with whom were *D. Christopher Ohly* and *Melnicove, Kaufman, Weiner & Smouse, P.A.* on the brief, for appellee — cross appellant.

ELDRIDGE, J., delivered the opinion of the Court.

The laws of this State prohibiting discrimination in employment provide, *inter alia,* that it shall be unlawful for an employer to refuse to hire an individual "because of such individual's . . . physical or mental handicap unrelated in nature and extent so as to reasonably preclude the performance of the employment . . . ." Maryland Code (1957,

1979 Repl. Vol.), Art. 49B, § 16 (a) (1). The phrase "physical or mental handicap" is defined as "any physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness . . . ." Art. 49B, § 15 (g). We issued a writ of certiorari in this case to determine the extent, if any, that obesity may be a "physical or mental handicap" within the meaning of the statutory language. Despite the importance of this issue, we shall not be able to address it because of the employer's failure to exhaust administrative remedies.

Jacquelin Wilson applied for the position of bus driver with the Mass Transit Administration (MTA), and she was given a medical examination by the MTA's physician. The examining physician's report stated that Ms. Wilson was "40 lbs. overweight," although no cause for this condition was set forth in the report. Ms. Wilson's employment application was rejected by the MTA because she was overweight. During the same period of time (1979-1980), the applications of Dorothea Goodman and Betty R. Wright for employment as bus drivers were also rejected by the MTA for the same reason.[1]

The three women whose employment applications were rejected filed complaints with the Maryland Commission on Human Relations, alleging unlawful employment discrimination by the MTA.[2] An investigation of the complaints by the Commission's staff pursuant to Art. 49B, § 10, resulted in staff findings of probable cause to believe that the MTA had engaged in discrimination based on physical handicaps in violation of Art. 49B, § 16 (a) (1). After the MTA refused to concur with the findings and refused to execute proposed conciliation agreements, the Commission's staff decided that

---

1. The examining physician's reports concerning Ms. Goodman and Ms. Wright are not contained in the record before us.

2. The Commission on Human Relations is charged with the responsibility for enforcing the provisions in Art. 49B of the Code relating to discrimination, including employment discrimination. Art. 49B, §§ 3, 9-13.

Although the MTA is a state agency, being part of the Maryland Department of Transportation, state agencies are subject to the provisions of the Code prohibiting employment discrimination and are subject to the jurisdiction of the Commission on Human Relations. Art. 49B, § 7.

the matter would be set for a public hearing before a Commission hearing examiner.

Before any hearing was held, the MTA commenced the present action by filing in the Circuit Court of Baltimore City a bill for declaratory and injunctive relief against the Commission. The bill recited the basic facts concerning the complaints which had been filed with the Commission, as well as the general allegation that numerous other similar complaints had been filed. The bill set forth the MTA's belief "that it is necessary for the protection of the public safety that the MTA require applicants for the position of bus driver to meet certain weight requirements because of the lack of agility associated with overweight or obesity which agility is necessary for the safe operation of MTA buses." The MTA asserted "that overweight or obesity is not a physical handicap within the meaning of the definition found in Article 49B" and "that the Commission has neither the power, authority nor jurisdiction to consider obesity as a physical handicap." The MTA requested a declaratory judgment determining whether overweight or obesity is a physical handicap within the meaning of the statute, as well as an injunction preserving the status quo pending the judicial determination.

The Commission filed a demurrer and an answer, asking that the bill of complaint be dismissed for failure of the MTA to exhaust its statutory administrative remedies. The Commission denied that it had taken a position on the question of whether obesity was a physical handicap within the meaning of the statute, and asserted that the issue should be determined after a public hearing by a hearing examiner.

In a written opinion, the Circuit Court held that the MTA need not exhaust administrative remedies because "the issue here is purely one of statutory interpretation." The Commission's demurrer was overruled, and the Commission was enjoined "from processing any complaints based on alleged discrimination because of obesity, pending further Order of this Court."

Subsequently, the MTA filed a motion for summary judgment. The Commission opposed the motion on the grounds

that the MTA had failed to exhaust administrative remedies and that obesity is not, as a matter of law, excluded from the definition of "physical handicap" in Art. 49B, § 15 (g). Attached to the Commission's opposition was an affidavit by Dr. Neil Solomon, an expert in the "treatment of conditions commonly called 'overweight' and 'obesity,'" which stated: "Although it is not common, both overweight and obesity can ... be caused by illness, bodily injury or birth defect." Cases of obesity caused by illness, severe trauma and genetic deficiency were described.

The Circuit Court granted the motion for summary judgment, holding that no factual dispute existed. The court entered a declaratory judgment to the effect that the Commission "is without jurisdiction to process complaints filed with it claiming obesity as a physical handicap under the definition contained in Article 49B, § 15 (g), unless, as a threshold matter, the [Commission] affirmatively ascertains that the obesity condition complained of 'is caused by bodily injury, birth defect or illness.' If there is no affirmative finding of causation, the [Commission] has no jurisdiction to further process the claim...." The court enjoined the Commission "from further processing each precipitating complaint against MTA based on alleged discrimination because of obesity until it is determined as a threshold matter that each complaint which is to be further processed is founded on 'bodily injury, birth defect or illness' ...."

The Commission took an appeal to the Court of Special Appeals, arguing (1) that the bill should have been dismissed for failure to exhaust administrative remedies and (2) that the Commission should not be required "to determine at the threshold that a Complainant's obesity or overweight 'is caused by bodily injury, birth defect or illness' before it can process such a complaint" (Commission's brief, p. 2). The MTA took a cross-appeal, arguing that "obesity is not a physical handicap within the meaning of Art. 49B, § 15 (g) ... even if it is caused by bodily injury, birth defect, or illness." (MTA's brief, p. 10). This Court issued a writ of certiorari prior to oral argument in the intermediate appellate court.

Under Art. 49B, §§ 10 and 11, if after investigation, the Commission's staff finds probable cause to believe that a discriminatory act or acts have been committed, and if no agreement is reached for the elimination of the alleged discriminatory acts, a case is to be set for a hearing before a hearing examiner. At the hearing, the Commission's general counsel is to present the case in support of the complaint, and the respondent may submit testimony, examine and cross-examine witnesses and "be fully heard." Art. 49B, § 11 (b). After the hearing, the hearing examiner is to render a decision; if the examiner finds that the respondent has engaged in unlawful discrimination, he is to enter an appropriate order. Art. 49B, § 11 (e). Furthermore, "any party affected by the [hearing] examiner's decision" may take an appeal to an "appellate panel of commissioners" in accordance with the procedural rules of the Commission. Art. 49B, § 3 (d). Finally, as we held in *Soley v. St. Comm'n On Human Rel.,* 277 Md. 521, 525-526, 356 A.2d 254 (1976), under Art. 49B, § 12, together with the Administrative Procedure Act, Code (1957, 1978 Repl. Vol.), Art. 41, § 255, either the Commission, the respondent, or a party aggrieved by the Commission's decision may file an action for judicial review.

The above-described administrative and judicial review remedies were not exhausted in the present case. Because of this action for a declaratory judgment and an injunction, the complaints of Jacquelin Wilson, Dorothea Goodman and Betty R. Wright have not yet been heard by a hearing examiner.

This Court has firmly adhered to the rule that statutorily prescribed administrative and judicial review remedies must ordinarily be pursued and exhausted. As recently summarized by Judge Digges for the Court in *Prince George's Co. v. Blumberg,* 288 Md. 275, 283-284, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981):

> "An examination of the decisions of this Court over the last four or five decades will supply ample support for the statement that there are few legal

tenets which have received greater acceptance into the jurisprudential law of this State than the one announcing:

> [A] claimant ordinarily must seek to redress the wrong of which he complains by using the statutory procedure the legislature has established for that kind of case, if it is adequate and available, and that if he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than by seeking to invoke the ordinary general jurisdiction of the courts . . . . [Consequently, we] have consistently held that where a special form of remedy is provided, the litigant must adopt that form and must not bypass the administrative body or official, by pursuing other remedies. [*Agrarian, Inc. v. Zoning Inspector,* 262 Md. 329, 332, 277 A.2d 591, 592 (1971).]
>
> See in addition, *e.g., Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 308, 407 A.2d 738, 741 (1979); *Klein v. Colonial Pipeline Company,* 285 Md. 76, 83, 400 A.2d 768, 772 (1979); *White v. Prince George's Co.,* 282 Md. 641, 649, 387 A.2d 260, 265 (1978); *DuBois v. City of College Park,* 280 Md. 525, 533, 375 A.2d 1098, 1104 (1977); *Comm'n on Med. Discipline v. Bendler,* 280 Md. 326, 330, 373 A.2d 1232, 1234 (1977); *Comm'rs of Cambridge v. Henry,* 263 Md. 370, 373-74, 283 A.2d 415, 417 (1971)."

The principle that statutory administrative remedies must normally be exhausted is not only a requirement of our case law; it is a policy embodied in various enactments of the General Assembly. For example, the Administrative Procedure Act authorizes an aggrieved party to seek judicial review only from "a *final* decision" of an administrative agency. Art. 41, § 255 (a), emphasis supplied. The Declaratory Judgments Act, Code (1974, 1980 Repl. Vol.), § 3-409

(b) of the Courts and Judicial Proceedings Article, states: "If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

In fact, because of the strong public policy underlying this requirement that administrative remedies be exhausted, this Court, if it notices in a particular case an issue as to whether administrative remedies have been exhausted, will sua sponte address the issue despite the failure of the parties to raise the matter. *Joseph H. Munson Co. v. Sec. of State,* 294 Md. 160, 448 A.2d 935 (1982); *Sec., Dep't of Human Res. v. Wilson,* 286 Md. 639, 645, 409 A.2d 713 (1979).[3]

We have recognized a few limited exceptions to the exhaustion requirement, the principal one being an action challenging the validity of a legislative enactment on its face. *National Asphalt v. Prince Geo's Co.,* 292 Md. 75, 77, 437 A.2d 651 (1981); *Shipp v. Bevard,* 291 Md. 590, 599, 435 A.2d 1114 (1981); *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 308-309, 407 A.2d 738 (1979).[4] The instant case, however, falls within no exception recognized by this Court.

Although there may be cases in some other jurisdictions supporting the trial court's view that administrative remedies need not be exhausted if the question is one of statutory interpretation like that presented here,[5] this view

---

3. For a discussion of the public policy reasons for the exhaustion requirement, *see, e.g.,* Prince George's Co. v. Blumberg, 288 Md. 275, 284, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); Sec., Dep't of Human Res. v. Wilson, 286 Md. 639, 644-645, 409 A.2d 713 (1979).

4. Another "exception" to the exhaustion requirement arises when the legislature in a particular enactment has indicated its intent that a statutory administration remedy need not be invoked and exhausted under certain circumstances. White v. Prince George's Co., 282 Md. 641, 649, 387 A.2d 260 (1978); Md.-Nat'l Cap. P.&P. v. Wash. Nat'l Arena, 282 Md. 588, 595-596, 386 A.2d 1216 (1978). In addition, exhaustion of an administrative remedy might not be required "[w]here the administrative agency cannot provide to any substantial degree a remedy." Prince George's Co. v. Blumberg, *supra,* 288 Md. at 285.

5. *See* some of the cases reviewed in Davis, *Administrative Law Treatise* (1958, 1982 Supp.), Ch. 20.

is contrary to the settled law of Maryland. This Court has consistently held that statutorily prescribed administrative and judicial review remedies must be exhausted in cases involving the interpretation of statutory language. *See, e.g., Prince George's Co. v. Blumberg, supra,* 288 Md. at 287-290 (interpretation of county building code); *Sec., Dep't of Human Res. v. Wilson, supra,* 286 Md. at 642, 647 (interpretation of statutory provision increasing the amount of unemployment benefits); *Soley v. St. Comm'n On Human Rel., supra,* 277 Md. at 523-524, 527-528 (interpretation of provision in Art. 49B setting forth requirements for complaints issued by Human Relations Commission). Moreover, to hold that the existence of a statutory interpretation issue furnishes an excuse to abort the administrative proceedings before a final agency decision, would also be inconsistent with the principle that the agency's construction of a statute which it administers is entitled to weight. *See National Asphalt v. Prince Geo's Co., supra,* 292 Md. at 80; *Balto. Bldg. & Constr. Trades v. Barnes,* 290 Md. 9, 14-15, 427 A.2d 979 (1981); *Comptroller v. John C. Louis Co.,* 285 Md. 527, 543, 404 A.2d 1045 (1979); *Holy Cross Hosp. v. Health Services,* 283 Md. 677, 685, 393 A.2d 181 (1978); *Demory Brothers v. Bd. of Pub. Works,* 273 Md. 320, 327, 329 A.2d 674 (1974); *Department v. Greyhound,* 247 Md. 662, 669, 234 A.2d 255 (1967).

The MTA in the present case has couched the statutory interpretation issue in terms of the Commission's "authority" or "power" or "jurisdiction," and has charged that the Commission is attempting to "expand" its jurisdiction and proceed in an unauthorized manner. Nevertheless, many, if not most, statutory interpretation issues arising in administrative proceedings could be phrased in terms of the agency's "authority," "power" or "jurisdiction" to take a certain type of action in a specific case. A party's argument that an agency will be exceeding its authority if it ultimately interprets the statute and decides the case contrary to that party's position, does not excuse the failure to await a final agency decision. Thus in *Soley v. St. Comm'n On Human Rel., supra,* 277 Md. at 523-524, 527-528, it was argued by the

appellant that, because the initial complaints failed to conform to statutory requirements as interpreted by the appellant, the Commission would be exceeding its authority to process the complaints and that, therefore, the appellant need not exhaust the statutorily prescribed administrative remedies. In rejecting this argument, Judge Levine stated for the Court (*id.* at 527-528):

"The remaining ground on which appellants rely for their contention that the general rule should not be applied here is that there need be no exhaustion of administrative remedies where the act of the administrative agency is alleged to be ultra vires or illegal. They rest this contention on two cases, *Shpak v. Mytych,* 231 Md. 414, 418, 190 A. 2d 777 (1963), and *Stark v. Board of Registration,* 179 Md. 276, 284, 19 A. 2d 716 (1941). This reliance is misplaced. In neither *Shpak* nor *Pressman v. Barnes,* 209 Md. 544, 549-50, 121 A. 2d 816 (1956), the principal authority which it cites, did this Court hold that declaratory relief may be granted where a law is alleged to be ultra vires or illegal, despite the existence of a statutory remedy.

\* \* \*

"We find no authority, therefore, for the proposition that there need be no exhaustion of a statutory or administrative remedy where the act of an administrative agency is alleged to be ultra vires or illegal. Accordingly, we hold that the chancellor was correct in his conclusion that where a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under the declaratory judgment act."

The Court in *Soley* went on to note (*id.* at 528, n. 3) that under the Administrative Procedure Act, Art. 41, § 255 (g) (2) and (4), among the grounds upon which a final administrative decision may be judicially reviewed, are that it was

"[i]n excess of the statutory authority or jurisdiction of the agency" or "[a]ffected by other error of law."

It may well be that exhaustion of administrative remedies is not required where an "agency is palpably without jurisdiction." Davis, *Administrative Law Treatise* (1958), Ch. 20, § 20.01, p. 56. Here, however, the Commission on Human Relations concededly has jurisdiction over employment discrimination cases, over employment discrimination based upon a "physical or mental handicap," and over the MTA. The Commission is not attempting to act when it "is palpably without jurisdiction," in the words of Professor Davis. Under our decisions, the question of the extent, if any, that obesity may be a "physical or mental handicap" within the meaning of the employment discrimination laws, is the type of issue which, if arising in a contested administrative case, should await a final agency decision prior to judicial resolution.

> *Judgment of the Circuit Court of Baltimore City reversed, and case remanded to that Court with directions to dismiss the bill of complaint.*
>
> *Costs to be paid by the Mass Transit Administration.*