## JOSEPH I. SMUCK ET AL. v. ANNE ARUNDEL COUNTY, MARYLAND

[No. 1450, September Term, 1982.]

*Decided June 14, 1983.*

The cause was argued before GILBERT, C. J., and GARRITY and BLOOM, JJ.

*Richard E. Rice,* with whom were *Niles, Barton & Wilmer* on the brief, for appellants.

*Karen Alexa Murphy, Assistant County Solicitor for Anne Arundel County,* with whom was *Steven P. Resnick, County Solicitor for Anne Arundel County,* on the brief, for appellee.

BLOOM, J., delivered the opinion of the Court.

Appellants, Joseph I. Smuck and Stanley J. Smuck, owners and developers of a subdivision in Anne Arundel County known as College Manor, together with the developer of the adjacent subdivision of Raintree, entered into a Utility Contract with Anne Arundel County under which the developers agreed to construct, at their expense, a sewer line extending from their subdivisions to the county owned and operated sewer collection system. In consideration for this construction, the county, pursuant to §17-611 of the Anne Arundel County Code, agreed to give the developers credits, amounting to 12½ percent of their actual costs of constructing the line, against capital connection charges which would be required to be paid upon development of the subdivisions. County Code §17-611 authorizes the county

> to enter into appropriate agreements with developers which, among other things, may provide for reasonable credits against any special water and wastewater benefit charges, capital connection charges and other such charges in consideration of the construction by such developers at their own expense ... of ... wastewater collection or treatment facilities, and the conveyance of such facilities to the county without costs.

In the negotiations leading to the Utility Contract, appellants took the position that they should be allowed credits equal to their total cost of construction (the maximum amount permissible under §17-611), contending that other subdivisions had received 100 percent capital connection credits under identical circumstances. By letter dated March 17, 1980, the Director of the County Department of Public Works made it clear that the county would allow capital connection credits up to an amount totaling 12½ percent of

actual construction costs, on the theory that if the county were to construct the sewer lines, 87½ percent of the costs would be paid by the Federal and State governments.

After entering into the Utility Contract, the Messrs. Smuck appealed to the County Board of Appeals from "the decision of the Director of Public Works rendered on March 17, 1980," referring to the Director's letter of that date to the effect that the county would allow connection credits totaling just 12½ percent of actual construction costs. The county moved for a dismissal of the appeal on the ground that the Board had no jurisdiction to hear that appeal. The Board agreed, granted the county's motion, and dismissed the appeal. That order of dismissal was appealed to the Circuit Court for Anne Arundel County (Wolff, J.) which, after a hearing, entered a judgment affirming the Board of Appeals. This appeal is from that judgment.

The county, relying upon *Department of Health & Mental Hygiene v. Lions Manor Nursing Home,* 281 Md. 425 (1977), contends that it is immaterial whether the decision to allow credits amounting to just 12½ percent of construction costs was good, bad, reasonable or arbitrary because the parties had bound themselves by a contract embodying those terms. In the *Lions Manor* case, the parties had entered into a contract which contained a provision prohibiting the Nursing Home from charging for personal laundry services. That provision was included as a result of a recently adopted directive of the Department prohibiting such charges. The Nursing Home sought to challenge the validity of the directive, contending that it amounted to an order which had not been lawfully promulgated. The Court held this contention to be irrelevant because even if the directive itself were ineffective as a rule, its contents were effective as part of the agreement between the parties.

Appellants, however, point out that they insulated themselves from the effect of *Lions Manor* by causing the insertion of the following clause into the Utility Contract:

> 11. It is understood between the parties that the two developers intend to appeal the decision of the

> Department of Public Works which allowed credits against the sewer connection charges only to the extent of 12½ percent of the actual cost of construction and that the execution of this Utility Agreement will not prejudice either the Petitioners' claim for higher credits or the said appeal.

This clause is a clear recognition by the county that the developers were not "accepting" the finality of the Director's decision to limit their credits to just 12½ percent of their costs but, with the county's consent, were preserving whatever rights they might have to some appellate review of that decision. Of course, the clause does not specify the nature of the intended appeal or the tribunal to which it would be referred. Even if it were clearly understood, however, that the developers were reserving a right of appeal to the County Board of Appeals, such reservation would be a nullity if there were no authority for the Board of Appeals to review the decision of which appellants complain. The jurisdiction of the County Board of Appeals is conferred by the Charter and Code of the county pursuant to legislative authority. Subject matter jurisdiction cannot be conferred upon a tribunal by agreement of the parties. *State v. McCray,* 267 Md. 111, 126 (1972).

Anne Arundel County elected to become a charter county by adopting a Charter pursuant to Article XIA of the Maryland Constitution. It created a County Board of Appeals in accordance with Article 25A, §5 (U) of the Annotated Code of Maryland (1957 Edition), the Express Power Act. The jurisdiction of the Board, therefore, derives from §5 (U) of Article 25A and from the County Charter.

Anne Arundel County Charter, §602, defines the powers and functions of the County Board of Appeals.[1] Subsections (a), (b) and (c), granting the Board appellate jurisdiction from orders (a) relating to zoning, (b) relating to licenses and permits and (c) relating to building, are admittedly not applicable. Appellants contend, however, that subsections

---

1. The powers and functions of the Board are also set forth, in identical language, in §2-100 of the County Code.

(d) and (e) do confer upon the Board jurisdiction to review the decision by which they are aggrieved. Those subsections are as follows:

> (d) Appeals from executive, administrative and adjudicatory orders. The county board of appeals shall hear and decide appeals from all other administrative and adjudicatory orders other than those affecting the internal operation of the executive branch as may from time to time be provided by Article 25A of the Annotated Code of Maryland (1957 Edition), as amended, or by ordinance of the county council not inconsistent therewith.

> (e) Appeals from decisions on utility extensions. The county board of appeals, shall, in lieu of the Anne Arundel County Sanitary Commission and the county commissioners as heretofore, hear appeals from decisions involving the extension of sewer and water services as provided in Section 538 of the Charter.

The notes of the Reporter for the Anne Arundel County Charter Commission, which Commission drafted the Charter, reflect the intentions of that body with respect to the meaning of subsections (d) and (e):

> (d) As hereinbefore stated this subsection is the "catch-all" appeals section. [It] is designed particularly to include within the jurisdiction of the County Board of Appeals all matters now or hereinafter covered by Article 25A, Section 5 (U) of the Code. In addition to zoning matters, this section of the Code refers to the following cases to be heard by the County Board of Appeals; ". . . the issuance, removal, denial, revocation, suspension, annulment or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or any adjudicatory order; and the assessment of any special benefit tax . . ."

> The language of this section is similar to that of the Baltimore County Charter, Section 602 (d). How-

ever, the phrase "other than those affecting the internal operation of the executive branch" was added because the Charter Board did not want the government to come to a complete standstill while orders are being appealed. For example, an order to fix the time the floors in the Court House should be swept and waxed should not be subject to appeal to the County Board of Appeals.

(e) Currently the utility extensions are granted and denied initially by the Sanitary Commission and an aggrieved party may appeal to the County Commissioners. See Sections 22-25 and 22-26 of the Anne Arundel County Code. Under subsection (e) utility extension appeals will be heard by the County Board of Appeals with the limitation that the Board may not grant an extension previously denied by the Director of Public Works in the event that the extension shall be in "excess of appropriation or allotment therefor."

In relying upon subsection (d), the "catchall" provision, appellants point out that the language of this subsection (as the Reporter's note indicates) is similar to that of §602 (d) of the Baltimore County Charter. They then refer to the case of *Hope v. Baltimore County,* 288 Md. 656 (1980), wherein the Court of Appeals held that the approval or disapproval of a subdivision plat was a decision appealable to the Baltimore County Board of Appeals and not to the Circuit Court.

Appellants should not rest their faith on *Hope.* That case holds that approval or disapproval of a subdivision plat is an adjudicatory order which, under the specific language of Charter §602 (d) as well as Code Ann. (1957) Art. 25A, §5 (U), is appealable to the County Board of Appeals. The "decision" which our appellants attempted to appeal to the Board, however, is not an adjudicatory order within the meaning of Art. 25A, §5 (U) or §602 (d) of the Charter or §2-100 of the County Code. Nor is it an administrative order within the meaning of §602 (d) of the Charter or §2-100 of the County Code. It is not an order of any kind. It is a proposal — an offer

of consideration for a proposed contract — and, as such, did not come under subsection (d) of Charter §602.

At first glance, it may appear that subsection (e) of Charter §602 would confer upon the Board of Appeals the right of review since the decision does relate to an extension of sewer services. However, there is no suggestion that it is a type of decision (formerly made by the Anne Arundel County Sanitary Commission from which appeals were formerly made to the County Commissioner) "involving the extension of sewer and water services as provided in Section 538 of the Charter." Without setting forth Section 538 of the Charter verbatim, we note that it defines the duties of the Charter-created Department of Public Works and that nowhere in that section is there any reference to a decision or determination of the extent of consideration, in the form of credits, or otherwise, which the county will grant to a developer for the construction of a capital improvement at the developer's expense.

The terms of the Utility Contract between the county and the appellant, including the amount of credits for connection charges allowed appellants as consideration for the construction of a sewer line, are effective as between the parties by virtue of the contract, no matter how the amount of that consideration was arrived at by the county. *Department of Health and Mental Hygiene v. Lions Manor Nursing Home, supra.* The County Board of Appeals has no appellate jurisdiction, under Charter §602, over the terms of contracts entered into by the county.

Appellants insist, however, that they are not seeking Board review of the terms of the contract itself. Rather, they claim that Paragraph 11 of the contract, by which they reserved the right to appeal the 12½ percent decision, enables that decision to be reviewed independently of the contract, as if they were appealing from the decision of the Director of Public Works before entering into a contract with the county. Even that approach would not help the appellants because the Director's decision, even before the contract was executed, to limit the county's offer of con-

sideration for construction of the sewer line to a 12½ percent credit, was not an appealable *order* within the meaning of §602 (d) or an appealable *decision* "involving the extension of sewer and water services as provided in Section 538 of the Charter" within the meaning of §602 (e).

Having no jurisdiction over the decision complained of, the County Board of Appeals was correct in dismissing appellants' appeal to it. Judge Wolff was correct in affirming the Board of Appeals, and his decision will be affirmed.

> *Judgment affirmed.*
> *Costs to be paid by appellant.*